QUTT

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND
Circuit Court

| | |
|---|---|
| U.S. BANK TRUST, N.A. | ) |
| as trustee for LSF9 Master Participation | ) |
| c/o Rosenberg & Associates, LLC | ) |
| 7910 Woodmont Avenue, Suite 750 | ) |
| Bethesda, Maryland 20814 | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| NICOLLE JOHNSON | ) |
| 11726 Bishops Content Road | ) |
| Mitchellville, Maryland 20721 | ) |
| | ) |
| and | ) |
| | ) |
| TODD JOHNSON | ) |
| 750 3RD Street, NW | ) |
| Washington, DC 20001 | ) |
| | ) |
| and | ) |
| | ) |
| BANK OF AMERICA, N.A. | ) |
| 100 North Tryon Street | ) |
| Charlotte, North Carolina 28255 | ) |
| | ) |
| Serve Resident Agent: | ) |
| The Corporation Trust Incorporated | ) |
| 351 West Camden St. | ) |
| Baltimore, MD 21201 | ) |
| | ) |
| and | ) |
| | ) |
| PLEASANT PROSPECT HOA, INC. | ) |
| 11785 Beltsville Drive, 10th Floor | ) |
| Calverton, Maryland 20705 | ) |
| | ) |
| Serve Resident Agent: | ) |
| William M. Shipp | ) |
| 11785 Beltsville Dr. 10th Floor | ) |
| Calverton, MD 20705 | ) |
| | ) |
| and | ) |

Case No. _____

CAE
CAE15-15650

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

DEPARTMENT OF THE TREASURY )
INTERNAL REVENUE SERVICE )
)
Serve: Rod J. Rosenstein, Esquire )
       U.S. Attorney for District of Maryland )
       36 S. Charles Street 4th Floor )
       Baltimore, MD 21201 )
)
Certified Copy to : )
       Attorney General of the United States )
       Loretta E. Lynch )
       950 Pennsylvania Avenue, NW )
       Washington, DC 20530-0001 )
)
and )
)
STATE OF MARYLAND )
COMPTROLLER OF MARYLAND )
301 W. Preston Street )
Baltimore, MD 21201 )
)
       Defendants )

## COMPLAINT TO QUIET TITLE, FOR DECLARATORY JUDGMENT AND NOTICE OF LIS PENDENS
### (Complaint Involving Real Property)

U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation, by and through its counsel, Brett C. Beehler, Sara Tussey, and Rosenberg & Associates, LLC, files this Complaint to quiet title to the real property and improvements commonly known as 11726 Bishops Content Road in Mitchellville, Maryland 20721; and respectfully represents unto this Honorable Court as follows:

### PARTIES, JURISDICTION & VENUE

1.    U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation is a national association authorized to conduct business in the State of Maryland.

2.    Defendant Nicolle Johnson is an adult resident of Prince George's County, Maryland and is a record owner of the real property and improvements commonly known as

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

11726 Bishops Content Road in Mitchellville, Maryland 20721 (hereinafter, the "Subject Property").

3.       Defendant Todd Johnson is an adult resident of the District of Columbia and is a record owner of the Subject Property.

4.       Defendant Bank of America, N.A. is a national association and may have an interest in the Subject Property.

5.       Defendant Pleasant Prospect Homeowners Association, Inc. is a Maryland corporation and may have an interest in the Subject Property.

6.       Defendant Department of the Treasury, Internal Revenue Service, is a division of the United States government and may have an interest in the Subject Property.

7.       Defendant Comptroller of Maryland is a division of the State of Maryland government and may have an interest in the Subject Property.

8.       Jurisdiction in this Court is proper pursuant to the Maryland Code, Courts and Judicial Proceedings Article, Section 6-103.

9.       Venue in this Court is proper pursuant to the Maryland Code, Courts and Judicial Proceedings Article, Sections 6-201, 6-202 and 6-203.

10.      The Prince George's County Circuit Court has subject matter jurisdiction over this action pursuant to the Maryland Code, Courts and Judicial Proceedings Article, Section 3-403.

11.      Pursuant to Maryland Rule 12-102, since this action affects title to or an interest in real property located in the State of Maryland, the filing of this Complaint constitutes a Lis Pendens on and against the Subject Property.

## FACTS

12.      On or about October 3, 1991, Donald E. Brown (hereinafter, "Brown") acquired fee simple interest in the Subject Property by Deed recorded October 7, 1991 in the

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER 55105

land records of Prince George's County, Maryland at Book 8083 Page 382. *A true copy of the Deed is attached hereto as Exhibit A and incorporated herein by reference.*

13.    On or about October 15, 1999, Brown executed a Deed of Trust against the Subject Property in favor of Bank of America, N.A. in the amount of $228,800.00 (hereinafter, the "Unreleased DOT"). *A true copy of the Unreleased DOT is attached hereto as Exhibit B and incorporated by reference.*

14.    On or about April 11, 2002, Brown sold the Subject Property to Todd Johnson and Nicolle Johnson, as Tenants by the Entirety (jointly, "The Johnsons"), for a purchase price of $330,000.00. The Deed was recorded April 19, 2002 in the Land Records of Prince George's County, Maryland at Book 15716 Page 276. *A true copy of the Deed is attached hereto as Exhibit C and incorporated herein by reference.*

15.    Upon information and belief, the Unreleased DOT was in fact paid off at the time of the April 11, 2002 transfer, or prior thereto, and should have been released of record.

16.    The Unreleased DOT remains a cloud on title.

17.    On or about April 11, 2002, The Johnsons executed a Note and related Deed of Trust against the Subject Property in favor of Washington Mutual Bank, FA in the amount of $297,000.00. The Deed of Trust was recorded April 19,2002 in the land records of Prince George's County, Maryland at Book 15716 Page 278 (hereinafter, the "Purchase Money DOT"). *A true copy of the Purchase Money DOT is attached hereto as Exhibit D and incorporated herein by reference.*

18.    On March 30, 2006, The Johnsons were granted a Judgment of Absolute Divorce in Case CAD04-01019 in the Circuit Court for Prince George's County, Maryland.

19.    As a result of the Court's entry of a Judgment of Absolute Divorce, by operation of law the party's unity of marriage was severed and the Subject Property was thereafter owned by The Johnsons as Tenants in Common.

ROSENBERG & ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

20.    On or about August 31, 2007, Nicolle Johnson refinanced the Subject Property and executed a promissory note in favor of Washington Mutual Bank, FA in the amount of $335,000.00.

21.    In conjunction with the Note, Nicolle Johnson executed a Deed of Trust against the Subject Property in favor of Washington Mutual Bank in the amount of $335,000.00, which said Deed of Trust was subsequently recorded in the land records of Prince George's County on January 3, 2008 at Book 29166 Page 001 (hereinafter, the "Subject DOT"). *A true copy of the Subject DOT is attached hereto as Exhibit E and incorporated herein by reference.*

22.    The Subject DOT refinanced the Purchase Money DOT which had an unpaid balance of $281,326.21. *True copies of the HUD-1 Settlement Statement from the August 31, 2007 refinance closing, as well as the Finance Affidavit recorded with the Subject DOT reflecting the outstanding balance of the Purchase Money DOT being paid off, are collectively attached hereto as Exhibit F and incorporated herein by reference.*

23.    Through inadvertence or mistake, the Subject DOT was never executed by Todd Johnson, in spite of the fact he retained a Tenant in Common interest in the Subject Property.

24.    Plaintiff is the current owner of the underlying Note and has the right to enforce the Subject DOT.

25.    Upon information and belief, Nicolle Johnson has failed to make require payments under the Note and the Subject DOT, and the loan is presently in default.

26.    Upon reviewing title, Plaintiff discovered that Todd Johnson was a record owner of the Subject Property and had erroneously not executed the Subject DOT.

27.    Pleasant Prospect HOA, Inc., may have an interest in the Subject Property due to statements of lien filed against the Subject Property and recorded in the land records of

ROSENBERG &
ASSOCIATES, LLC,
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

Prince George's County, Maryland at Book 22608 Page 009 (recorded July 28, 2005); Book 26269 Page 417 (recorded October 26, 2006), Book 29468 Page 090 (recorded March 17, 2008), and Book 30602, Page 138 (recorded May 11, 2009).

28.    Pleasant Prospect HOA may also have an interest in the Subject Property due to judgments filed on April 8, 2006 (Case No. 33001-2005) and August 5, 2010 (Case No. 23492-2008).

29.    The State of Maryland, Comptroller of Maryland, may have an interest in the Subject Property due to those certain Notices of Lien of Judgment for Unpaid Tax recorded on August 29, 2007 (Case No. CAL07-21792), April 21, 2008 (Case No. CAL08-11484), October 23, 2009 (Case No. CAL09-32670), and July 17, 2012 (Case No. CAL12-22227).

30.    The Internal Revenue Service may have an interest in the Subject Property due to those certain Notices of Federal Tax Lien filed April 21, 2008 (Case No, FL08-0859), April 23, 2008 (Case No. FL08-0877), and November 8, 2009 (Case No. FL09-3065).

31.    The Parties to the Subject DOT intended the Subject DOT to be a first-priority lien against the Subject Property.

32.    Plaintiff is the owner of the underlying loan and is entitled to enforce the Subject DOT.

33.    Through error, mistake, inadvertence or fraud, Defendant Todd Johnson was not added as a grantor on the Subject DOT and, therefore, his interest remains unencumbered by the DOT.

## COUNT I
### (Reformation of Deed of Trust)

Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 33 as if stated at length herein, and further alleges as follows:

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000.
FILE NUMBER: 55105

34.    The parties to the Subject DOT intended that the Subject DOT would be signed by all title owners of the Subject Property and would create a valid first priority lien on and against the Subject Property.

35.    The Subject DOT does not include Todd Johnson as a grantor and does not include the signature of Todd Johnson.  As a result, the Subject DOT does not accurately reflect the true intent of the parties to the Subject DOT.

36.    The failure of the Subject DOT to reflect the true intent of the parties was due to inadvertence, mutual mistake, or misrepresentation that Nicolle Johnson had the right to grant and convey the entire Subject Property to the Trustee.

37.    The Johnsons have received the benefit of the loan proceeds and the ends of justice and equity dictate that they should be held to the intent of the parties at the time of execution.

38.    It is necessary to add Todd Johnson as a party to the DOT so that the intentions of the parties can be fulfilled.

39.    Equity and the ends of justice require that this Honorable Court reform and correct the Subject DOT, *nunc pro tunc* as of August 31, 2007, by adding Todd Johnson as a grantor. In so doing, this Honorable Court will rectify the mistake, omission or fraud that led to the execution of the DOT by Nicolle Johnson, only, and assure that the Subject DOT, as reformed, is a valid first priority lien on the Subject Property.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an equitable decree:

      A.  Reforming the Subject DOT, *nunc pro tunc* as of August 31, 2007, to include Todd Johnson as a Grantor;

      B.  Reforming the Subject DOT, *nunc pro tunc* as of August 31, 2007, to include the signature of Todd Johnson;

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000

FILE NUMBER: 55105

C. Grant the plaintiff such other and further relief as is deemed just and proper by this Honorable Court.

## COUNT II
### (Quiet Title)

Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 39 as if stated at length herein, and further alleges as follows:

40.     Plaintiff claims a first priority secured interest in the Subject Property.

41.     Plaintiff denies and disputes the right, title and interest in the Subject Property asserted by Bank of America or any other Defendants to the extent any such assertions claim the Subject Property is not subject to a first-priority lien in favor of Plaintiff.

42.     It was the original intention of the parties that the Subject DOT would be a first priority lien against the Subject Property.

43.     Plaintiff is entitled to an equitable decree quieting title and declaring that the Subject DOT constitutes a valid, subsisting, and enforceable first priority lien on the Subject Property as of August 31, 2007.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an equitable decree:

A.     Declaring that the recorded Subject DOT constitutes a valid, subsisting, and enforceable first priority lien against the entire Subject Property, *nunc pro tunc* as of August 31, 2007; and

B.     Granting the plaintiff such other and further relief as is deemed just and proper by this Honorable Court.

## COUNT III
### (Constructive Trust – Appointment of Trustee)

Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 43 as if stated at length herein, and in the alternative alleges as follows:

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

44.    In conjunction with the purchase of the Subject Property, Nicolle Johnson agreed to provide Plaintiff, or its predecessor, with a first-priority lien on the Subject Property.

45.    In light of the fact that the Subject DOT was not signed by Todd Johnson, Plaintiff's first priority lien is in jeopardy.

46.    In light of the fact that the Unreleased DOT remains of record, Plaintiff's first priority lien is in jeopardy.

47.    Equity and the ends of justice require that this Honorable Court enter a decree, to be recorded, naming a special commissioner and/or trustee to execute a Certificate of Satisfaction for the Unreleased DOT.

48.    Furthermore, equity and the ends of justice also require that this Honorable Court enter a decree, to be recorded, naming a special commissioner and/or trustee to re-execute the Subject DOT on behalf of Todd Johnson, and establishing that following such execution of the Subject DOT and recording of same in the Land Records of Prince George's County, Maryland, that the Subject DOT shall be deemed to fully and properly secure Plaintiff in a first-priority lien position effective, *nunc pro tunc*, as of the original August 31, 2007 execution date.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an equitable decree:

A.    Appointing a special commissioner and/or trustee to execute, *nunc pro tunc* as of April 11, 2002, a Certificate of Satisfaction for the Unreleased DOT; and

B.    Appointing a special commissioner and/or trustee to re-execute, *nunc pro tunc* as of August 31, 2007, the Subject DOT on behalf of Todd Johnson; and

C.    Declaring that the Subject DOT shall, *nunc pro tunc*, constitute a valid and enforceable first-priority lien upon the Subject Property as of August 31, 2007; and

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

D.     Ordering that the clerk of the Land Records of Prince George's County, Maryland shall record the Subject DOT with a copy of any such decree; and

E.     Granting the Plaintiff such other and further relief as is deemed just and proper by this Honorable Court.

## COUNT IV
### (Unjust Enrichment)

Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 48 as if stated at length herein, and further alleges as follows:

49.    Nicolle Johnson and Todd Johnson benefitted from the Note and related Subject DOT by receiving $335,000.00 which was used, in part, to refinance the Purchase Money DOT and, effectively, remove Todd Johnson's liability under the Purchase Money DOT since the new loan was taken out solely in the name of Nicolle Johnson.

50.    Nicolle Johnson and Todd Johnson had knowledge of the benefits they received.

51.    Nicolle Johnson and Todd Johnson are retaining the benefits that they received.

52.    In exchange for the money loaned, Nicolle Johnson granted the Subject DOT against the Subject Property, intending to grant a secured interest in favor of Plaintiff with respect to the entire Subject Property.

53.    Plaintiff is the current owner of the Note and Subject DOT.

54.    An actual controversy exists between Plaintiff and the Johnsons as to whether the Subject DOT constitutes a valid and subsisting first-priority lien upon the entire Subject Property.

55.    The proceeds of the Note satisfied other encumbrances on the Subject Property.

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55705

56.    Nicolle Johnson and Todd Johnson are unjustly enriched because they received the proceeds to refinance the prior lien, but through mistake, inadvertence or fraud, Todd Johnson did not sign the Subject DOT; thus calling into question the Subject DOT's effectiveness as a lien against the intended, entire Subject Property.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order:

A.    Declaring that the recorded Subject DOT constitutes a valid, subsisting, and enforceable first priority lien, *nunc pro tunc* as of August 31, 2007, against the entire Subject Property; and,

B.    Granting the plaintiff any such other and further relief as is deemed just and proper by this Honorable Court.

Respectfully submitted,

ROSENBERG & ASSOCIATES, LLC

Brett C. Beehler, Esquire
Sara Tussey, Esquire
7910 Woodmont Avenue, Suite 750
Bethesda, MD 20814
(301) 907-8000
bbeehler@rosenberg-assoc.com
stussey@rosenberg-assoc.com
*Counsel for Plaintiff*

ROSENBERG &
ASSOCIATES, LLC
7910 WOODMONT AVENUE
SUITE 750
BETHESDA, MARYLAND 20814
301-907-8000
FILE NUMBER: 55105

8083   382

File No. 8732-18

DEED

THIS DEED made this 3rd day of October, 1991, by and between CIH WOODMORE LIMITED PARTNERSHIP, a Maryland limited partnership, party of the first part, and DONALD E. BROWN, party of the second part.

WITNESSETH that in consideration of the sum of THREE HUNDRED TWENTY-ONE THOUSAND AND NO/100 DOLLARS ($321,000.00), the receipt of which is hereby acknowledged by the party of the first part prior to the execution and delivery hereof, the said party of the first part does hereby grant and convey unto DONALD E. BROWN, his heirs and assigns, in fee simple as sole owner, all that piece or parcel of land lying, being and situate in Prince George's County, Maryland and being more particularly described as follows, to wit:

> Lot numbered One Hundred Twenty-Seven (127) in the subdivision known as "BISHOP'S CONTENT VILLAS AT WOODMORE," as per Plat Five thereof recorded in Plat Book NLP 148 at plat 86 among the Land Records of Prince George's County, Maryland, being in the 7th Election District of said county.

> The above described property being part of that same land and premises as was acquired by the said party of the first part by two certain deeds recorded in Liber 7076 at folio 1 and in Liber 7212 at folio 858 among the aforesaid land records.

Subject to covenants and restrictions of record.

TOGETHER with the improvements thereupon made, erected or being; and all and every, the rights, alleys, ways,

-1-

EXHIBIT

A

8083  383

waters, privileges, advantages and appurtenances to the same belonging or in anywise appertaining.

AND the said party of the first part covenants that it will warrant specially the property herein conveyed and execute such further assurances of the land as may be requisite.

IN WITNESS WHEREOF the party of the first part has hereunto caused this instrument to be executed under seal as of the year and day first above written.

> CIH WOODMORE LIMITED
> PARTNERSHIP, a Maryland
> limited partnership
>
> By: CIH Woodmore, Inc.,
>   a Maryland corporation
>   General Partner
>
> By: _Michael D. Huke_
>   Michael D. Huke
>   President

STATE OF MARYLAND )
COUNTY OF MONTGOMERY ) ss:

I HEREBY CERTIFY that on this 3RD day of OCTOBER , 1991, before me, the subscriber, a Notary Public for the State of Maryland, did personally appear Michael D. Huke who acknowledged himself to be the President of CIH Woodmore, Inc., a Maryland corporation, general partner of the party of the first part herein, and did further acknowledge that pursuant to a duly adopted resolution of the Board of Directors of the said corporation authorizing him so to do, did execute the aforegoing conveyance for and on behalf of and in the name of said limited partnership by signing the name of the corporate general partner as its President and attorney-in-fact.

IN WITNESS WHEREOF, I have hereunto set my hand and notarial seal this 3RD day of OCTOBER , 1991.

_Barbara R. Rilke_ (SEAL)
NOTARY PUBLIC

My Commission expires:
4-1-93

-2-

8083   384

I HEREBY CERTIFY under the penalties of perjury that the actual consideration paid for the aforegoing conveyance was $321,000.00.

CIH WOODMORE LIMITED
PARTNERSHIP, a Maryland
limited partnership

By: CIH Woodmore, Inc.,
a Maryland corporation
General Partner

By: _____
Michael D. Huke
President

I HEREBY CERTIFY that the within instrument was prepared under the supervision of an attorney duly authorized to practice before the Maryland Court of Appeals.

_____
CHRISTOPHER P. SUSS

### STATE TRANSFER TAX AFFIDAVIT

The undersigned grantees hereby certify under penalties of perjury that the property herein conveyed is improved by a residence which they will occupy. This Affidavit is being made in order to obtain an exemption from state transfer tax on the first $30,000.00 of consideration payable for this conveyance.

_____
DONALD E. BROWN

Subscribed and sworn to before me this 3RD day of _____, 1991.

_____
NOTARY PUBLIC

My Commission expires:

MR. CLERK:
After recording, please remit to:

Mr. Donald E. Brown
11726 Bishop's Content
Mitchellville, Maryland 20721

My Commission Expires 2-1-95

-3-

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) VJ 8083, p. 0384, MSA_CE64_8164. Date available 07/17/2007. Printed 05/11/2016.



8083   385

1999 NOV -1  A 11: 27

CLERK OF THE
CIRCUIT COURT

13446  CS5

SUBMITTED FOR RECORDATION
BY AND RETURN TO:

LOAN # 6971447393
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE/RECEIPT DEPT.
JACKSONVILLE FL 32256

RETURN TO:
ROBERT P. GOLDMAN, ESQ.
15215 SHADY GROVE RD., STE. 101
ROCKVILLE, MD 20850
(301) 670-3444

File No. 99-15788

This is to certify that this instrument has been reviewed by an
attorney admitted to practice before the Court of Appeals for the
State of Maryland.

Robert P. Goldman, Esq.

——————— [Space Above This Line For Recording Data] ———————

LOAN # 6971447393

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on OCTOBER 15, 1999 . The grantor is DONALD E. BROWN

("Borrower"). The trustee is TIM, INC.

("Trustee"). The beneficiary is BANK OF AMERICA, N.A.

which is organized and existing under the laws of THE UNITED STATES OF AMERICA , and whose address is 5160 PARKSTONE DRIVE #190, CHANTILLY, VA 20151

("Lender"). Borrower owes Lender the principal sum of TWO HUNDRED TWENTY EIGHT THOUSAND EIGHT HUNDRED AND 00/100

Dollars (U.S. $ 228,800.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 01, 2029 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in PRINCE GEORGE County, Maryland:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

| | |
|---|---|
| THE FD SURC $ | 5.00 |
| RECORDING FEE | 73.00 |
| TOTAL | 88.50 |
| Book PG82 | Rcvd # 48634 |
| VI  LWS | Blk # 212 |
| Nov 01, 1999 | 11:24 am |

which has the address of  11726 BISHOPS CONTENT, MITCHELLVILLE                              [Street, City],
Maryland    20721                    [Zip Code] ("Property Address");

MARYLAND -Single Family- FNMA/FHLMC UNIFORM
INSTRUMENT
-BS6H2MD) (9710)
ELECTRONIC LASER FORMS, INC. • (800)327-0545
Page 1 of 6

CWO  10/14/99 9:38 AM 6971447393

EXHIBIT
B

13445    396

**LEGAL DESCRIPTION**

Lot numbered One Hundred Twenty-Seven (127) in the subdivision known as "BISHOP'S CONTENT VILLAS AT WOODMORE," as per Plat Five thereof recorded in Plat Book NLP 148 at Plat 86 among the Land Records of Prince George's County, Maryland, being in the 7th Election District of said county.

AND BEING the same property conveyed to Donald E. Brown, as sole owner, by virtue of a Deed dated October 3, 1991 and recorded October 7, 1991 in Liber 8083 at Folio 382 among the Land Records of Prince George's County, Maryland.

13448    357

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described

13445   388

above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in

13448    223

which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and

-BS6H(MD) (9710)    CMG 10/14/99 9:38 /M 6971447393    Page 4 of 6

Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of     FIVE (5)     % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 21 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

13445    422

24. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 21 of this Security Instrument.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) (specify) | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
DAVID E. BROWN                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                                 -Borrower

STATE OF MARYLAND, Montgomery County ss:

I Hereby Certify, That on this 15th day of October 1999, before me, the subscriber, a Notary Public of the State of Maryland, in and for the

Donald E. Brown

known to me or satisfactorily proven to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged the ROBERT P. GOLDS, LLC executed the same for the purposes therein contained.

NOTARY WITNESS my hand and notarial seal.

PUBLIC My Commission Expires of Montgomery

STATE OF Maryland Montgomery County ss:

I Hereby Certify That on this 15th day of October 1999, before me, the subscriber, a Notary Public of the State of Maryland and for the County of Montgomery personally appeared

Diamond Title Insurance Corp.

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission Expires: _____ Notary Public

This is to certify that the within instrument was prepared BY A PARTY TO THE INSTRUMENT.

ROBERT P. GOLDS
Notary Public, State of Maryland
County of Montgomery
My Commission Expires

13445    402

LOAN # 6971447393

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    15TH    day of
OCTOBER    ,    1999    , and is incorporated into and shall be deemed to
amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument")
of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:  11726 BISHOPS CONTENT, MITCHELLVILLE, MD  20721

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together
with other such parcels and certain common areas and facilities, as described in
***  COVENANTS, CONDITIONS, AND RESTRICTIONS.  ***
(the "Declaration"). The Property is a part of a planned unit development known as

VILLAS AT WOODMORE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners
Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association;
and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall
promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - 897
Page 1 of 3
-BS7U (9706)    ELECTRONIC LASER FORMS, INC. - (800)327-0545
197P 10/14/99 9:38 AM 6971447393

13445    403

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i)  Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii)  Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 10.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

-BS7U (9706)                           Page 2 of 4                    10/14/99 3:03 AM 6971467383

13048    466

(iii)  termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F.  Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

13446    405

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DONALD E. BROWN                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

-BS7U (9705)                    Page 4 of 4              N97P 10/14/98 9:28 AM 5971457393

13449    466

LOAN # 6971447393

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this 15TH day of OCTOBER 1999 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
11726 BISHOPS CONTENT, MITCHELLVILLE, MD 20721

(Property Address)

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER - 6/97

Page 1 of 4

%BS57U (9705)    ELECTRONIC LASER FORMS, INC. - (800)327-0545

MSTF 10/14/99, 9::8 AM 6971447393

13446    407

B.  USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C.  SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D.  RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E.  "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

F.  BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

G.  ASSIGNMENT OF LEASES. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

-BSS7U (9706)                    Page 2 of 4              MSTF 10/14/98 8:38 AM 6371447393

13445    408

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.  CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-BS57U. (9706)                    Page 3 of 4                    MS7E. 10/14/89 9:39 AM 6971047393

13446    409

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

_____  (Seal)
                                                    -Borrower

-BS57U (9706)                Page 4 of 4           U57F  10/14/98  9:38 AM  6971447252

## FINANCE AFFIDAVIT

13486   910  I/We certify, under penalties of perjury, that the following are accurate responses regarding the financing we are offering for record on this date:

**A.  STATE RECORDATION TAX - PRINCIPAL RESIDENCE**

_____ Initial here if the document presented is a refinancing of a debt for which you are the original mortgagor, or you assumed from the original mortgagor, AND the property is your principal residence. The debt instrument being refinanced is at Liber _____, Folio _____ and has an unpaid principal balance of $_____.   (NOTE: B-1 or B-2 must also be used)

**B.  COUNTY TRANSFER TAX - PRINCIPAL RESIDENCE**

1.  _____ Initial here if the document presented is new financing or refinancing of existing debt on your principal residence, for which you are the original mortgagor (or assumed from the original mortgagor), on a purchase money mortgage/deed of trust AND more than 12 months have passed since it was recorded.   (NOTE: If refinancing, A must be used.)

2.  _____ Initial here only if this is a refinancing of debt on your principal residence AND you do not meet BOTH the purchase money and 12-month requirements described in B-1. The debt instrument being refinanced is at Liber 8083&9566 Folio 3948856 , and the amount of debt shown on that instrument is $ 65550.00 & .   (NOTE: A must also be used)
$198,000.00

**C.  COUNTY TRANSFER TAX - NOT PRINCIPAL RESIDENCE**

DB  Initial here only if this is a refinancing of existing debt, for which you were the original mortgagor (or assumed from the original mortgagor) on property that is NOT your principal residence. The debt instrument being refinanced is at Liber 8083&9566 Folio 3948856 ; and the amount of debt shown on that instrument is $65550.00 & $198,000.00

I/We understand that if I/we fail to truthfully answer or provide information to avoid collection of County Transfer and Recordation Tax, I/we may be found guilty of a misdemeanor and, on conviction, may be subject to a fine not exceeding $5,000.00 or imprisonment not exceeding eighteen (18) months or both; and I/we authorize Prince George's County to take the appropriate steps necessary to confirm and verify the information made on this affidavit.

_____    _____
Signature of Borrower          Signature of Borrower

_____    _____
Signature of Borrower          Signature of Borrower

RECORDATION TAX PAID
OFFICE OF FINANCE
PRINCE GEORGE'S COUNTY, MD.

State of Maryland
County of Montgomery

On this 15th day of October 19 99 , before me, a Notary Public of the State and County aforesaid, personally appeared Donald E. Brown known to me to be, or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within affidavit, and who acknowledged that he/she/they executed the same for the purposes therein contained.

_____
Notary Public

My Commission Expires: 09.09.01

A01#0:22TXREC.      $1,007.60
PGCC  11:07AM11-01-99      81

13446    411

## State of Maryland Land Instrument Intake Sheet
☐ Baltimore City  ☑ County: PRINCE GEORGES

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only.*

(Type or Print in Black Ink Only—All Copies Must Be Legible)

| 1 | Type(s) of Instruments | (☐ Check Box if Addendum Intake Form is Attached.) |  |  |  |
|---|---|---|---|---|---|
|  |  | ☐ Deed | ☐ Mortgage | ☐ Other ____ | ☐ Other ____ |
|  |  | ☑ Deed of Trust | ☐ Lease | ☐ Other ____ | ☐ Other ____ |

| 2 | Conveyance Type Check Box | ☐ Improved Sale Arms-Length [1] | ☐ Unimproved Sale Arms-Length [2] | ☐ Multiple Accounts Arms-Length [3] | ☐ Not an Arms-Length Sale [9] |
|---|---|---|---|---|---|

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation _____ |
|---|---|---|
|  |  | State Transfer _____ |
|  |  | County Transfer _____ |

| 4 | Consideration and Tax Calculations | Consideration Amount |  | Finance Office Use Only |  |
|---|---|---|---|---|---|
|  |  | Purchase Price/Consideration | $ | Transfer and Recordation Tax Consideration | |
|  |  | Any New Mortgage | $ | Transfer Tax Consideration | $ |
|  |  | Balance of Existing Mortgage | $ | X( )% = | $ |
|  |  | Other: | $ | Less Exemption Amount = | $ |
|  |  |  |  | Total Transfer Tax = | $ |
|  |  | Other: | $ | Recordation Tax Consideration | $ |
|  |  |  |  | X( ) per $500 = | $ |
|  |  | Full Cash Value | $ | TOTAL DUE | |

| 5 | Fees | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|
|  |  | Recording Charge | $ 20.00 | $ | |
|  |  | Surcharge | $ 5.00 | $ | Tax Bill: |
|  |  | State Recordation Tax | $ | $ | |
|  |  | State Transfer Tax | $ | $ | C.B. Credit: |
|  |  | County Transfer Tax | $ | $ | |
|  |  | Other | $ | $ | Ag. Tax/Other: |
|  |  | Other | $ | $ | |

| 6 | Description of Property SOAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | District. | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|---|---|
|  |  |  | 07-077-1242 |  |  |  | ☐ (5) |
|  |  | Subdivision Name | | Lot (3a) | Block (3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage (4) |
|  |  | BISHOP'S CONTENT VILLAS AT 112+ WOODMORE | | Location/Address of Property Being Conveyed (2) | | | |

Other Property Identifiers (if applicable)    Water Meter Account No.

Residential ☐ or Non-Residential ☐    Fee Simple ☐ or Ground Rent ☐    Amount: _____
Partial Conveyance? ☐ Yes ☐ No    Description/Amt. of SqFt/Acreage Transferred: _____
If Partial Conveyance, List Improvements Conveyed:

| 7 | Transferred From | Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|---|---|
|  |  | DONALD E. BROWN | |
|  |  | Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|---|---|
|  |  | TIM, INC. | |
|  |  | New Owner's (Grantee) Mailing Address | |

| 9 | Other Names to Be Indexed | Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|---|---|

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | ☑ Return to Contact Person |
|---|---|---|---|
|  |  | Name: R. GOLDMAN | |
|  |  | Firm: LAW OFFICES OF R. GOLDMAN | ☐ Hold for Pickup |
|  |  | Address: 12215 SHADY GROVE RD #161 | |
|  |  | ROCKVILLE, MD 20850 Phone: (301) 670-3444 | ☐ Retain Address Provided |

| 11 | Assessment Information | IMPORTANT: BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER |
|---|---|---|
|  |  | ☐ Yes ☐ No Will the property being conveyed be the grantee's principal residence? |
|  |  | ☐ Yes ☐ No Does transfer include personal property? If yes, identify: |
|  |  | ☐ Yes ☐ No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). |

**Assessment Use Only - Do Not Write Below This Line**

| ☐ Terminal Verification | ☐ Agricultural Verification | ☐ Whole | ☐ Part | ☐ Trans. Process Verification |
|---|---|---|---|---|
| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | |
| Year | 19 | 19 | Geo. | Map | Sub. | Block |
| Land |  |  | Zoning | Grid | Plat | Lot |
| Buildings |  |  | Use | Parcel | Section | Occ. Cd. |
| Total |  |  | Town Cd. | Ex. St. | Ex. Cd. | |
| REMARKS: | | | | | | |

Distribution: White - Clerk's Office
            Canary - SDAT
            Pink - Office of Finance
            Goldenrod - Preparer
AOC-CC-300 (6/95)

## This Deed

15716    276

··· APR 19  A 9: 34

CLERK OF THE
CIRCUIT COURT

Made this _____11th_____ day of _____April_____, 2002, by and between
Donald E. Brown
Sole Owner

party(ies) of the first part, and
Todd Johnson and Nicolle Johnson

party(ies) of the second part, as Tenants by the Entirety.

**Witnesseth,** that in consideration of the sum of $ 330,000.00 , and other good and valuable considerations, the receipt of which is hereby acknowledged, the said parties of the first part, do grant and convey unto the parties of the second part, their heirs and assigns in fee simple, all that piece or parcel of ground, situate, lying and being in _Prince George's_ County, Maryland, and being described as follows:

Lot numbered One Hundred Twenty-Seven (127) in the Subdivision known as "BISHOP'S CONTENT VILLAS AT WOODMORE", as per Plat Five thereof recorded in Plat Book NLP 148 at plat 86 among the Land Records of Prince George's County, Maryland, being in the 7th Election District of said County.

By the execution of the Deed, the party(ies) of the first part hereby certify(ies) under penalties of perjury that the actual consideration paid or to be paid, including the amount of any mortgage or deed of trust outstanding, is in the sum total of $330,000.00.

*RECORDATION TAX AND TRANSFER TAX PAID OFFICE OF FINANCE PRINCE GEORGES COUNTY*

**Subject** to covenants and restrictions of record; being described in Liber 9083 folio 982

**I Hereby Certify** that this instrument was prepared under supervision of Richard J. Ham an attorney admitted to practice before the Court of Appeals for the State of Maryland.

**Together** with the buildings and improvements thereupon, erected, made or being; and all and every, title rights, alleys, ways, waters, privileges, appurtenances, and advantages, to the same belonging or in any wise appertaining. And the said parties of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

**Witness** their hands and seals.

ATTEST:

_____ (SEAL)
Donald E. Brown

All taxes on assessments certified to the
Collector of Taxes for Prince George's
County, MD by 4-16-02 c- have been paid
Dept. of Finance Prince George's County
MD. This statement is for recordation and is not
assurance against further taxation even
for prior periods, nor does it guarantee
satisfaction of outstanding tax sales.

_____ (SEAL)

TRANSFERRED

APR 18 2002

BY _____ CLERK
TRANSFER OFFICE

IMP FD SCGE $        5.00
RECORDING FEE        20.00
TR TAX STATE      1,650.00
TOTAL             1,675.00
Reef F003     Dept # 68427
RCT - CAS    Blk # 8371
Apr 19, 2002    09:55 am

STATE OF MARYLAND }
COUNTY OF Prince George's } to wit:

I HEREBY CERTIFY that on this _____11th_____ day of _____April_____, 2002, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Donald E. Brown _____ known to me (or satisfactorily proven to be) the person(s) whose name(s) are subscribed to the within named instrument and did acknowledge that he executed the same for the purposes therein contained.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal on the day and year aforesaid.

My Commission Expires 8-1-04
Comm Exp 8-1-4 co.

Notary Public, Maryland
$4,620

USLT FORM #23

0141D1#001DEEDIX
PGGS 08:24AM04-17-02

EXHIBIT

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0276, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716   277

STATE OF
COUNTY OF           } to wit:

On this _____ day of _____ , _____ .
before me, the undersigned officer, personally appeared _____

_____
known to me (or satisfactorily proven to be) the person(s) whose name(s) is/are subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal on the day and year aforesaid.

My Commission Expires:                  _____
                                                    Notary Public

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0277, MSA_CE64_15706. Date available 09/27/2005. Printed 05/19/2015.

# Deed

Donald E. Brown _____

_____

_____

TO

Todd Johnson _____

Nicolle Johnson _____

Received for record on the _____ day of _____ , _____ .
at _____ o'clock, _____ .M. and recorded in Liber No. _____ , folio _____
among the Land Records of the County of _____ , State of Maryland.

_____
                                          CLERK

Law Office
TITLE ASSOCIATES, INC.
12164 Central Ave., Suite 228
Mitchellville, MD  20721
CASE # 2002114

REMIT TO:

Todd Johnson _____
11726 Bishop's Content
Mitchellville, MD  20721

FNT/NYD030 11/89 • Page 2 - bp

15716    278

2002 i   i9 A 9 35

CLERK OF THE
CIRCUIT COURT

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE - MS156DPCA
GARDEN GROVE, CA 92841

PRINCE GEORGE'S COUNTY, MD.
NO TRANSFER-RECORDATION
TAXES TO BE COLLECTED
DATE 4-16-02 BY C M

——————— [Space Above This Line For Recording Data] ———————

TITLE ASSOCIATES INC 2002114-11

## PURCHASE MONEY DEED OF TRUST

03-2397-006441082-2

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated _____April 11, 2002_____ , together with all Riders to this document. NICOLLE

(B) "Borrower" is ___TODD JOHNSON AND NICOLE JOHNSON, MARRIED, ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Borrower is the trustor under this Security Instrument.

(C) "Lender" is ____Washington Mutual Bank, FA, a federal association_____
Lender is a _____Bank_____ organized and existing under the laws of ___United States of America___ . Lender's address is: ___400 East Main Street Stockton, CA 95290___ .
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is ___AL G. NOLAN & PATRICK M. GALLAGHER___ .

(E) "Note" means the promissory note signed by Borrower and dated ___April 11, 2002___ .
The Note states that Borrower owes Lender _Two Hundred Ninety-Seven Thousand &_ 00/100

Dollars (U.S. $___297,000.00___ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than ___May 1, 2032___ .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MARYLAND
73224 (02-01)

Page 1 of 17

IMP FD SURE $        5.00
RECORDING FEE       20.00
TOTAL               25.00
...

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0278, MSA_CE64_15716. Data available 09/27/2005. Printed 05/19/2015.



EXHIBIT
D

15716    279

03-2397-006441082-2

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

[X] Adjustable Rate Rider         [ ] Condominium Rider            [ ] 1-4 Family Rider
[ ] Graduated Payment Rider       [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider                 [ ] Rate Improvement Rider       [ ] Second Home Rider
[ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (iii) the performance of all agreements of Borrower to pay fees and charges arising out of the loan whether or not herein set forth. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power

MARYLAND
73224 (02-01)

Page 2 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0279, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    280                                        03-2397-006441082-2

of sale, the following described property located in ___Election District Prince George's___

___county of Maryland_____

LOT #127 IN THE SUBDIVISION KNOWN AS "BISHOP'S CONTENT VILLAS AT WOODMORE",
AS PER PLAT FIVE THEREOF RECORDED IN PLAT BOOK NLP 148 AT PLAT 96 AMONG THE
LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND, BEING IN THE 7TH ELECTION
DISTRICT OF SAID COUNTY.

which currently has the address of ___11726 BISHOP CONTENT_____,
                                                                    [Street]

___MITCHELLVILLE___, Maryland ___20715___    ("Property Address"):
         [City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements
and additions shall also be covered by this Security Instrument. All of the foregoing is referred to
in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed
and has the right to grant and convey the Property and that the Property is unencumbered, except
for encumbrances of record. Borrower warrants and will defend generally the title to the Property
against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and
non-uniform covenants with limited variations by jurisdiction to constitute a uniform security
instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and
any prepayment charges and late charges due under the Note. Borrower shall also pay funds for
Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument
shall be made in U.S. currency. However, if any check or other instrument received by Lender as
payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may
require that any or all subsequent payments due under the Note and this Security Instrument be
made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)
certified check, bank check, treasurer's check or cashier's check, provided any such check is
drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or
entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the
Note or at such other location as may be designated by Lender in accordance with the notice
provisions in Section 15. Lender may return any payment or partial payment if the payment or
partial payments are insufficient to bring the Loan current. Lender may accept any payment or
partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or
prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not
obligated to apply such payments at the time such payments are accepted. If each Periodic

MARYLAND
73224 102-011                          Page 3 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716: p. 0280, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    281

03-2397-006441082-2

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance of the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

MARYLAND
73224 (02-01)

Page 4 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0281, MSA_CE64_15716. Date available 09/27/2005. Printed 05/19/2015.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0282, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    282

03-2397-006441082-2

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these Items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

MARYLAND
73224 (02-01)                    Page 5 of 17

15716    283

03-2397-006441082-2

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in

MARYLAND
73224 (02-01)

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0283, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    284

03-2397-006441082-2

including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

MARYLAND
73224 (02-01)

Page 7 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0284, MSA_CE64_15796 Date available 09/27/2005. Printed 05/19/2015.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0285, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    285                                          03-2397-006441082-2

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein.  Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

MARYLAND
73224 (02-01)                        Page 8 of 17

15716    286

03-2397-006441082-2

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

MARYLAND
73124 (02-01)                    Page 8 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0286, MSA_CE64_15716. Date available 09/27/2005. Printed 05/19/2015.

15716    287

03-2397-006441082-2

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

MARYLAND
73224 (02-01)

Page 10 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0287, MSA_CE64_15796, Date available 09/27/2005, Printed 05/19/2015.

15716    288

03-2397-006441082-2

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in Interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

MARYLAND
73224 (02-01)    Page 11 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0288, MSA_CE54_15706. Date available 09/27/2005. Printed 05/10/2015.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0289, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    289

03-2397-006441082-2

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

MARYLAND
73234 (02-01)

15716    290

03-2397-006441082-2

conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

MARYLAND
73224 (02-01)

Page 13 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0290, MSA_CE64_157½, Date available 09/27/2005. Printed 05/19/2015.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) RFP 15716, p. 0291, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    291

03-2397-006441082-2

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MARYLAND
73224 (02-01)                              Page 14 of 17

15716    292

03-2397-006441082-2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all of any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000% % of the gross sale price and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716; p. 0292; MSA_CE64_15716; Date available 09/27/2005. Printed 05/19/2015.

15716    293

03-2397-006441082-2

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender or the Trustee (whether or not the Trustee is affiliated with Lender) may charge Borrower a fee for releasing this Security Instrument, but only if the fee is not prohibited by Applicable Law. Trustee may destroy the Note and the Security Instrument three (3) years after issuance of a full reconveyance or release (unless directed in such request to retain them).

24. **Substitute Trustee.** Lender may, at its option, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

x _____
TODD JOHNSON BY ADAM IVY FACT ATTA CARTER

x _____
NICOLE JOHNSON    NICOLLE JOHNSON

MARYLAND
73224 (02-01)                    Page 16 of 17

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 15716, p. 0293, MSA_CE64_15796. Date available 09/27/2005. Printed 05/19/2015.

15716    294

03-2397-005441082-2

———————— (Space Below This Line For Acknowledgment) ————————

STATE OF MARYLAND, *Prince Georges*    County ss:

I Hereby Certify, That on this ___11___ day of ___APRIL___, 2001 before me, the subscriber, a Notary Public of the State of Maryland, in and for the ___COUNTY AFORESAID___, personally appeared ___Todd Johnson & Nicole Johnson___

known to me or satisfactorily proven to be the person(s) whose name(s) ___ARE___ subscribed to the within instrument and acknowledged that ___THEY___ executed the same for the purpose therein contained.

AS WITNESS: my hand and notarial seal.

My Commission expires: *8-1-'04*

_____
Notary Public

MARYLAND
73224 (02-01)

Page 17 of 17

15716    295

**Washington Mutual**

ADDENDUM
To Maryland Deed of Trust

Loan No.: 03-2397-006441082-2

STATE OF MARYLAND, COUNTY OF *Prince Georges*    SS:

I HEREBY CERTIFY that on this *11* day of *April*, *2002*, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared *Richard J. Ham*, the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction was paid over and disbursed by the party or parties secured to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this Affidavit.

I further certify the sum received is all or part of the purchase money of the property.

AS WITNESS: my hand and notarial seal.

_____
NOTARY PUBLIC

My Commission expires: *8·1·04*

I HEREBY CERTIFY that the foregoing Deed of Trust was prepared by

Washington Mutual Bank, FA

Preparer: SMARO E MIKEDIS *Smaro E Mikedis*

Title: Information Coordinator

Company:
    Washington Mutual Bank, FA

MARYLAND
73284 (12/97)

29166 001

Recording requested by: LSI
When recorded return to :
Custom Recording Solutions
2550 N. Redhill Ave.
Santa Ana, CA. 92705
800-756-3524 Ext. 5011

· MS SC00140

CLERK OF THE
CIRCUIT COURT

2008 JAN -3 PM 12: 39

PR GEO CO MD

Prepared By:
Tracie Morton

———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 31, 2007
together with all Riders to this document.
(B) "Borrower" is Nicolle   Johnson, An Unmarried Woman

```
IMP FD SURE $      29.00
RECORDING FEE      29.00
TOTAL              40.00
Rest PG10   Rcpt # 11646
PM    YHC   Blk # 711
Jan 03, 2008      12:38 Pa
```

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Washington Mutual Bank

Lender is a federal association
organized and existing under the laws of the United States

0730299302

MARYLAND-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021 1/01

VMP -6(MD) (0602)
Page 1 of 15          Initials:
    VMP Mortgage Solutions, Inc.



EXHIBIT

E

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0002, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 002

Lender's address is 1400 South Douglass Road, Suite 100, Anaheim, CA 92806

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is John Burson

(E) "Note" means the promissory note signed by Borrower and dated August 31, 2007
The Note states that Borrower owes Lender Three Hundred Thirty Five Thousand and No/100
Dollars
(U.S. $ 335,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [x] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: 

0730299302

VMP -6(MD) (0802)        Page 2 of 15        Form 3021  1/01

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0003, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 003

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of PRINCE GEORGES :

[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

See Legal Description Atached Hereto And Made A Part Hereof

Parcel ID Number: 07-0771246                                    which currently has the address of
11726 Bishops Content Road                                                              [Street]
Mitchellville                                        [City], Maryland   20721        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0730299302

Initials: ___

VMP -6(MD) (0602)                        Page 3 of 15                        Form 3021  1/01

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0004, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 004

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: 

0730299302

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0005, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 005

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: 

0730299302

29166 006

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _____

0730299302

-6(MD) (0602)                          Page 6 of 15                          Form 3021  1/01

29166 007

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0007, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0008, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 008

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0730299302

Initials:

VMP® -6(MD) (0502)          Page 8 of 15          Form 3021   1/01

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0009, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 009

(b) Any such agreements will not affect the rights Borrower has – if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

0730299302

-6(MD) (0802)                                    Page 8 of 15                                    Form 3021  1/01

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0010, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 010

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: _____

0730299302

-6(MD) (0602)

Page 10 of 15

Form 3021  1/01

29166 011

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0011, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: 0730299302

-6(MD) (0802)    Page 11 of 15    Form 3021  1/01

29166 012

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

0730299302

Initials: _____

VMP -6(MD) (0602)          Page 12 of 15          Form 3021   1/01

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0012. MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.

29166 013

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument, together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Possession of the Property. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

Initials: _____

0730299302

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) PM 29166, p. 0013, MSA_CE64_29471. Date available 01/16/2008. Printed 05/19/2015.